**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

vs.

Case No. 4:02cr65-RH
Case No. 4:08cv78-RH/WCS

**TRENTON DENORM GREEN,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2255 MOTION

Defendant Trenton Green, through counsel, filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  Doc. 114.  The Government filed a response in opposition, and Defendant filed a rebuttal.  Docs. 118 and 119.

**Procedural History**

Defendants Green and Harris were charged with armed robbery of approximately $40,360 from the FSH (Florida State Hospital) Employees Credit Union in Quincy, the deposits of which were insured by the National Credit Union Administration Board, in violation of 18 U.S.C. § § 2113(a), 2113(d), and 2 (count one).  Doc. 1.  They were also charged with using and carrying a firearm during and in relation to the armed robbery

(as charged in count one) in violation of 18 U.S.C. § § 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 2 (count two). *Id.*[1]

Defendant entered into a plea and cooperation agreement with the Government. Doc. 46. The decision of whether to file a substantial assistance motion was left to the sole discretion of the United States Attorney. *Id.*, pp. 5-6. A factual basis for the plea was filed. Doc. 45. At the rearraignment proceeding it was noted that Defendant did not sign the statement of facts, but he told the court he had read it line by line and word by word, and everything in it was true. Doc. 69 (transcript), p. 9. Defendant told the court he read the plea and cooperation agreement line by line and word by word, and understood and agreed with every word of it. *Id.*, pp. 23-24. The court accepted Defendant's plea. *Id.*, p. 28.

At the time of sentencing, it was argued that Defendant had given information to the Government but did not receive a substantial assistance motion. Doc. 70, pp. 3-13, 23-25. The Government responded. *Id.*, pp. 13-23. The court found no basis for compelling the Government to file a motion, nor any basis for downward departure based on Defendant's assistance. *Id.*, pp. 25-35.[2] Defendant was sentenced to terms

---

[1] Count two actually referenced § § 924(c)(1)(A)(i) and *942*(c)(1)(A)(ii), but it was confirmed at rearraignment that the number had been transposed and this was a typographical error. Doc. 69, pp. 11-12. Defense counsel waived any defect with respect to the typographical error. *Id.*, pp. 13-14. There was also concern that the indictment did not specify brandishing the firearm but cited the statute for brandishing a firearm (which carried a minimum of seven rather than five years). Defendant was advised that he could waive the defect or require the Government to go back to the grand jury, and he decided to waive it and try to cooperate with the Government. Doc. 65, pp. 14-20. The § 2255 argument does not concern the brandishing aspect of the charge.

[2] In 2005 Defendant filed a motion for reduction for substantial assistance, claiming bad faith by the Government. The court denied the motion, and denial was

of 70 months and 84 months on the two counts (a total of 154 months), to be served consecutively.  *Id.*, p. 35; doc. 62 (judgment).  The judgment was affirmed on June 4, 2004, and the mandate issued on July 6, 2004.  Doc. 76.

**Timeliness**

At the outset, the court notes that there is a one year limitations period for filing a § 2255 motion, which "shall run from the latest of" a number of dates.  § 2255(f).  As relevant here, the time can run from "the date on which the judgment of conviction becomes final," or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  § 2255(f)(1) and (4).

Defendant claims that in June of 2007 he discovered that the credit union referenced in the indictment was not federally insured.  Doc. 114, p. 2.  But the indictment specifically charged that the deposits of the FSH Employees Credit Union were insured by the National Credit Union Administration, and insurance by the National Credit Union Administration is required under the statute.  If indeed it was not so insured, that was a fact which could have been easily discovered with due diligence at any point after Defendant was indicted.  The insured status was later uncovered (albeit at first erroneously) by a simple letter of inquiry from Defendant.  It therefore appears that the latest commencement date would be the date on which the conviction became final, on or about September 2, 2004 (when the time for filing a petition for writ of certiorari expired following the order of affirmance).  The one year expired in September

---

affirmed on appeal.  Doc. 108.

of 2005, and Defendant filed the § 2255 motion on February 15, 2008, almost two and a half years late.

The Government has not argued that the motion was untimely filed, however, and the court reaches the merits of the claim.

**§ 2255 Claim**

Defendant now asserts that the plea was not knowing and voluntary, the court lacked subject matter jurisdiction, the conviction was unsupported in fact in violation of due process, or he is actually innocent, as the FSH Employees Credit Union is not and never was a federally insured credit union for purposes of 18 U.S.C. § 2113.[3]

> As used in [§ 2113] the term "credit union" means any Federal credit union and any State-chartered credit union the accounts of which are insured by the National Credit Union Administration Board, and any "Federal Credit Union" as defined in section 2 of the Federal Credit Union Act. The term "State-chartered credit union" includes a credit union chartered under the laws of a State of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States.

§ 2113(g) (2009).[4]

Defendant submits two exhibits in support. The first is a letter to Defendant from the Federal Deposit Insurance Corporation (FDIC), in response to his inquiry, explaining that credit unions are insured and regulated by the National Credit Union Administration and not the FDIC. Ex. A (letter of March 29, 2007). The second is a letter to Defendant from the National Credit Union Administration, advising that "[w]e have no records for

---

[3] Defendant's arguments are somewhat conflicting, and he relies on standards of review not appropriate on collateral review. As all of the arguments are based on the federally insured status of the FSH Credit Union, the court reaches that question directly.

[4] Identical to § 2113(g) (2002).

Case Nos. 4:02cr65-RH and 4:08cv78-RH/WCS

F.S.H. Employees Credit Union as being insure by the National Credit Union Administration.  You may need to contact the State of Florida for more information."  Ex. B (letter of June 14, 2007).

The Government has provided a second letter which was sent to Defendant by the National Credit Union Administration, dated February 28, 2008.  Doc. 118, Ex. 1A.  Defendant was advised:

> we responded to your inquiry by letter dated June 14, 2007, in error, stating that we had no records of the F.S.H. Employees Credit Union.  F.S.H. Employees Credit is now known as Focus Credit Union.
>
> This letter certifies that Focus Credit Union - Charter Number 67443, obtained deposit insurance coverage from the National Credit Union Share Insurance Fund effective April 4, 1991.  As of the date of this letter, the credit union's deposits remain federally insured.

*Id.*

At a meeting on July 25, 2002, the Board of Directors / Members of the FSH Employees Credit Union adopted a resolution to amend the name to Focus Credit Union, effective January 1, 2003.  Doc. 118, Ex. 3B (doc. 118-6).  The amendment was approved on August 5, 2002.  The National Credit Union Administration Charter information for Focus Credit Union (number 67443) reflects that it was originally chartered and insured on April 4, 1991, and previously known as the FSH Employees Credit Union.  Doc. 118, Ex. 1B, p. 1; *see also* p. 2 (certificate of National Credit Union Administration for FSH Employees Credit Union, 67443, issued April 24, 1991, certifying that each member's shares are insured up to $100,000).

The robbery in this case was committed on or about October 2, 2002, only a few months before the effective date of the name change.  Under either name, however, the

argument that this particular credit union was not insured by the National Credit Union Administration is based solely on the letter to Defendant dated June 14, 2007. The letter was written years after the offense and guilty plea, and years after the credit union was renamed.

In light of the exhibits filed by the Government, the error was clearly reasonable, and corrected by a follow up letter to Defendant. Though Defendant responds that he "would be more impressed with the Government's assertions" had it provided more evidence, including a copy of the actual insurance policy and proof that the insuring agency actually paid a claim for reimbursement for this robbery. Doc. 119. The burden is not on the Government here, however. Defendant has failed to demonstrate that the credit union he robbed on October 2, 2002, was not a credit union as defined by 18 U.S.C. § 2113(g). His claims, all based on this premise, must fail.

It is therefore respectfully **RECOMMENDED** that the § 2255 motion, doc. 114, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on March 27, 2009.


    S/    William C. Sherrill, Jr.
    **WILLIAM C. SHERRILL, JR.**
    **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

Case Nos. 4:02cr65-RH and 4:08cv78-RH/WCS